# UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

FILED

JUN 1 1 2015

Deputy Clerk, U.S. District Court
Middle District of Louisiana
Baton Rouge, La.

**INDICTMENT FOR CONSPIRACY TO DISTRIBUTE AND POSSESS WITH THE INTENT TO DISTRIBUTE COCAINE AND COCAINE BASE, DISTRIBUTION OF COCAINE BASE, DISTRIBUTION OF MDMC AND BZP, DISTRIBUTION OF COCAINE, MDMC, AND 4-FMC, DISTRIBUTION OF BZP, POSSESSION WITH INTENT TO DISTRIBUTE MARIJUANA, CONSPIRACY TO OBTAIN CONTROLLED SUBSTANCES BY FRAUD, CONSPIRACY TO DISTRIBUTE AND POSSESS WITH THE INTENT TO DISTRIBUTE MDMA, POSSESSION OF FIREARMS BY A CONVICTED FELON, POSSESSION WITH INTENT TO DISTRIBUTE BZP, POSSESSION OF FIREARMS IN FURTHERANCE OF A DRUG TRAFFICKING CRIME, MISPRISION OF A FELONY, UNLAWFUL TRAVEL IN AID OF A RACKETEERING ENTERPRISE, UNLAWFUL USE OF A COMMUNICATIONS FACILITY AND FORFEITURE**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL NO. 15-83-SDD-SCR |
| | : | |
| VERSUS | : | 21 U.S.C. § 846 |
| | : | 18 U.S.C. § 2 |
| KELLY D. WILLIAMS, CHARLES C. | : | 21 U.S.C. § 841(a)(1) |
| LONDON a/k/a "C," C'PRIEN C. NICHOLAS | : | 21 U.S.C. § 843(a)(3) |
| a/k/a "CP," DEMITORIS C. ALEXANDER | : | 18 U.S.C. § 922(g)(1) |
| a/k/a "Big Tachi" a/k/a "Big Dog," TACHI J. | : | 18 U.S.C. § 924(c) |
| WILLIAMS a/k/a "Little Tachi" a/k/a | : | 18 U.S.C. § 4 |
| "Little Man," ARTEY D. FOULCARD a/k/a | : | 18 U.S.C. § 1952(a)(3) |
| "Toochie," SYLVESTER S. SMITH a/k/a | : | 21 U.S.C. § 843(b) |
| "Cain," MYRON CHEVELLE HART, | : | 21 U.S.C. § 853 |
| DONALD SANDERS, JR. a/k/a "Duck," | : | 18 U.S.C. § 924(d)(1) |
| DERRICK D. HILLIARD a/k/a "D," WILLIE | : | |
| C. LEWIS a/k/a "Clay," SEKARI DAVIS | : | |
| WASHINGTON, CHRISTOPHER | : | |
| MONTRELL COOPER, CLARENCE WHITE | : | |
| a/k/a "Happy," VERNON A. POWELL a/k/a | : | |
| "V," DEVON D. FOSTER a/k/a "Von," | : | |
| KENNETH W. GARDNER, ERIC O'NEAL | : | |
| SELDERS a/k/a "Head," JAMES EDWARD | : | |
| ALLEN a/k/a "Duke," COLIN Y. KNOX a/k/a | : | |
| "Niles" a/k/a "Bearwolf," DWAN M. | : | |
| DELAVALLADE a/k/a "Tank," KELVIN | : | |
| RONELLE JOHNSON a/k/a "Biggie," | : | |
| DEMARCUS D. NORRIS a/k/a "DD," | : | |
| GERRY EARL GRIFFIN, KIMBERLY | : | |
| ANN LONDON, GREGORY C. WALKER | : | |

Kleinpeter
USM & USPO

a/k/a "Greg," D'ANDRE TAVIS SMITH a/k/a    :
"Dre," JEREMY JAMES WASHINGTON          :
a/k/a "Worm," RUDY McVAY CAIN, II,            :
MYRON DERELL MILLS a/k/a "Ox,"              :
JOHNNY C. ALEXANDER, ANDREA ROSE          :
RUMORE, STEPHANIE A. ZERINGUE,            :
SUSAN LYNN ZERINGUE, ASHLEY N.            :
HEBERT, JOSEPH D. SERGENT, KEEYON          :
MONDRELL SANDERS, JERRON                    :
ALBRITTON a/k/a "Out of Town Shorty,"          :
and BARBARA DEYATTA JORDON               :

## THE GRAND JURY CHARGES:

## AT ALL TIMES RELEVANT TO THIS INDICTMENT:

1.    **KELLY D. WILLIAMS** (hereinafter referred to as "**K. WILLIAMS**"), a defendant herein, was a resident of Baton Rouge, Louisiana, who bought substantial amounts of cocaine from various sources of supply and thereafter sold such cocaine and cocaine base (hereinafter referred to as "crack cocaine") for profit in Baton Rouge and elsewhere.  **K. WILLIAMS** also obtained controlled substances by fraud and sold such controlled substances in Baton Rouge and elsewhere.

2.    **CHARLES C. LONDON**, also known as "C" (hereinafter referred to as "**C. LONDON**"), a defendant herein, was a resident of Baton Rouge who bought substantial amounts of cocaine and 3,4-Methylenedioxymethamphetamine (MDMA) from various sources of supply and thereafter sold cocaine, crack cocaine and MDMA for profit in Baton Rouge and elsewhere.

3.    **C'PRIEN C. NICHOLAS**, also known as "CP" (hereinafter referred to as "**NICHOLAS**"), a defendant herein, was a resident of Gonzales, Louisiana, who bought substantial amounts of cocaine from various sources of supply and thereafter sold such cocaine for profit in Gonzales, Baton Rouge, and elsewhere.

4.      **DEMITORIS C. ALEXANDER**, also known as "Big Tachi" and "Big Dog" (hereinafter referred to as "**D. ALEXANDER**"), a defendant herein, was a resident of Gonzales who bought substantial amounts of cocaine from various sources of supply and thereafter sold such cocaine for profit in Gonzales, Baton Rouge, and elsewhere.

5.      **TACHI J. WILLIAMS**, also known as "Little Tachi" and "Little Man" (hereinafter referred to as "**T. WILLIAMS**"), a defendant herein, was a resident of Gonzales who bought substantial amounts of cocaine and thereafter sold such cocaine for profit in Baton Rouge and elsewhere.

6.      **ARTEY D. FOULCARD**, also known as "Toochie" (hereinafter referred to as "**FOULCARD**"), a defendant herein, was a resident of Franklin, Louisiana, who bought substantial amounts of cocaine from various sources of supply and thereafter sold such cocaine for profit in Baton Rouge and elsewhere.

7.      **SYLVESTER S. SMITH**, also known as "Cain" (hereinafter referred to as "**S. SMITH**"), a defendant herein, was a resident of Houston, Texas, who bought substantial amounts of cocaine from various sources of supply and thereafter sold such cocaine for profit in Baton Rouge and elsewhere.

8.      **MYRON CHEVELLE HART** (hereinafter referred to as "**HART**"), a defendant herein, was a resident of Baker, Louisiana, who bought substantial amounts of cocaine from various sources of supply and thereafter sold cocaine and crack cocaine for profit in Baton Rouge and elsewhere.

9.      **DONALD SANDERS, JR.**, also known as "Duck" (hereinafter referred to as "**D. SANDERS**"), a defendant herein, was a resident of Gonzales who assisted **NICHOLAS, K.**

WILLIAMS and **C. LONDON** in the venture to buy and sell cocaine, in addition to selling cocaine to others.

10. **DERRICK D. HILLIARD**, also known as "D" (hereinafter referred to as "**HILLIARD**"), a defendant herein, was a resident of Baton Rouge who bought substantial amounts of cocaine from various sources of supply, and thereafter sold cocaine and crack cocaine for profit in Baton Rouge and elsewhere.

11. **WILLIE C. LEWIS**, also known as "Clay" (hereinafter referred to as "**LEWIS**"), a defendant herein, was a resident of Baton Rouge who bought substantial amounts of cocaine from various sources of supply, and thereafter sold cocaine and crack cocaine for profit in Baton Rouge and elsewhere.

12. **SEKARI DAVIS WASHINGTON** (hereinafter referred to as "**S. WASHINGTON**"), a defendant herein, was a resident of Zachary, Louisiana, who assisted **K. WILLIAMS** in the venture to buy and sell cocaine and to obtain controlled substances by fraud.

13. **CHRISTOPHER MONTRELL COOPER** (hereinafter referred to as "**COOPER**"), a defendant herein, was a resident of Baton Rouge who assisted **K. WILLIAMS** and **C. LONDON** in the venture to buy and sell cocaine and crack cocaine, in addition to selling cocaine and crack cocaine to others.

14. **CLARENCE WHITE**, also known as "Happy" (hereinafter referred to as "**WHITE**"), a defendant herein, was a resident of Baton Rouge who assisted **K. WILLIAMS** and **LONDON** in the venture to buy and sell cocaine and crack cocaine, in addition to selling cocaine and crack cocaine to others.

15. **VERNON A. POWELL**, also known as "V" (hereinafter referred to as "**POWELL**"), a defendant herein, was a resident of Baton Rouge who assisted **K. WILLIAMS**

in the venture to buy and sell cocaine and crack cocaine, in addition to selling cocaine and crack cocaine to others.

16.     **DEVON D. FOSTER**, also known as "Von" (hereinafter referred to as "**FOSTER**"), a defendant herein, was a resident of Baton Rouge who bought cocaine from **K. WILLIAMS** and sold cocaine and crack cocaine to others.

17.     **KENNETH W. GARDNER** (hereinafter referred to as "**GARDNER**"), a defendant herein, was a resident of Zachary who bought cocaine and crack cocaine from **K. WILLIAMS** and **C. LONDON** and sold cocaine and crack cocaine to others.

18.     **ERIC O'NEAL SELDERS**, also known as "Head" (hereinafter referred to as "**SELDERS**"), a defendant herein, was a resident of Independence, Louisiana, who bought cocaine from **K. WILLIAMS** and sold cocaine and crack cocaine to others.

19.     **JAMES EDWARD ALLEN**, also known as "Duke" (hereinafter referred to as "**ALLEN**"), a defendant herein, was a resident of Baton Rouge who bought cocaine from **K. WILLIAMS** and sold cocaine and crack cocaine to others.

20.     **COLIN Y. KNOX**, also known as "Niles" and "Bearwolf" (hereinafter referred to as "**KNOX**"), a defendant herein, was a resident of Baton Rouge who assisted **K. WILLIAMS** in the venture to buy and sell cocaine.

21.     **DWAN M. DELAVALLADE**, also known as "Tank" (hereinafter referred to as "**DELAVALLADE**"), a defendant herein, was a resident of Baton Rouge who assisted in the venture to buy and sell cocaine and crack cocaine, bought cocaine from **C. LONDON**, and sold cocaine and crack cocaine to others.

22.     **KELVIN RONELLE JOHNSON**, also known as "Biggie" (hereinafter referred to as "**JOHNSON**"), a defendant herein, was a resident of Baton Rouge who assisted

**C. LONDON** in the venture to buy and sell cocaine and crack cocaine, in addition to selling cocaine and crack cocaine to others.

23.     **DEMARCUS D. NORRIS**, also known as "DD" (hereinafter referred to as "**NORRIS**"), a defendant herein, was a resident of Baton Rouge who bought cocaine from **C. LONDON** and sold cocaine and crack cocaine to others.

24.     **GERRY EARL GRIFFIN** (hereinafter referred to as "**GRIFFIN**"), a defendant herein, was a resident of Baton Rouge who bought cocaine from **C. LONDON** and  sold cocaine and crack cocaine to others.

25.     **KIMBERLY ANN LONDON** (hereinafter referred to as "**K. LONDON**"), a defendant herein, was a resident of Baton Rouge who assisted **K. WILLIAMS** and **C. LONDON** in the venture to buy and sell cocaine.

26.     **GREGORY C. WALKER**, also known as "Greg" (hereinafter referred to as "**WALKER**"), a defendant herein, was a resident of Donaldsonville, Louisiana, who bought cocaine from **NICHOLAS** and sold cocaine and crack cocaine to others.

27.     **D'ANDRE TAVIS SMITH**, also known as "Dre'" (hereinafter referred to as "**D. SMITH**"), a defendant herein, was a resident of Baton Rouge who bought cocaine from **NICHOLAS** and sold cocaine and crack cocaine to others.

28.     **JEREMY JAMES WASHINGTON**, also known as "Worm" (hereinafter referred to as "**J. WASHINGTON**"), a defendant herein, was a resident of Donaldsonville, Louisiana, who bought cocaine from **NICHOLAS** and sold cocaine and crack cocaine to others.

29.     **RUDY MCVAY CAIN, II** (hereinafter referred to as "**CAIN**"), a defendant herein, was a resident of Maurepas, Louisiana, who bought cocaine from **NICHOLAS** and sold cocaine and crack cocaine to others.

30.     **MYRON DERELL MILLS**, also known as "Ox" (hereinafter referred to as "**MILLS**"), a defendant herein, was a resident of Gonzales who bought cocaine from **NICHOLAS** and sold cocaine and crack cocaine to others.

31.     **JOHNNY C. ALEXANDER** (hereinafter referred to as "**J. ALEXANDER**"), a defendant herein, was a resident of Gonzales who assisted **NICHOLAS** in the venture to distribute cocaine by transporting cocaine and funds for the purchase of cocaine.

32.     **ANDREA ROSE RUMORE** (hereinafter referred to as "**RUMORE**"), a defendant herein, was a resident of Thibodaux, Louisiana, who assisted **NICHOLAS** and **D. ALEXANDER** in the venture to distribute cocaine by transporting cocaine and funds for the purchase of cocaine.

33.     **STEPHANIE A. ZERINGUE** (hereinafter referred to as "**STEPHANIE ZERINGUE**"), a defendant herein, was a resident of Thibodaux who assisted **NICHOLAS** and **D. ALEXANDER** in the venture to distribute cocaine by transporting cocaine and funds for the purchase of cocaine.

34.     **SUSAN LYNN ZERINGUE** (hereinafter referred to as "**SUSAN ZERINGUE**"), a defendant herein, was a resident of Thibodaux who assisted **NICHOLAS** and **D. ALEXANDER** in the venture to distribute cocaine by transporting cocaine and funds for the purchase of cocaine.

35.     **ASHLEY N. HEBERT** (hereinafter referred to as "**HEBERT**"), a defendant herein, was a resident of Thibodaux who assisted **NICHOLAS** and **D. ALEXANDER** in the venture to distribute cocaine by transporting cocaine and funds for the purchase of cocaine.

36.     **JOSEPH D. SERGENT** (hereinafter referred to as "**SERGENT**"), a defendant herein, was a resident of New Orleans, Louisiana, who supplied MDMA to **C. LONDON**.

37.     **KEEYON MONDRELL SANDERS** (hereinafter referred to as "**K. SANDERS**"), a defendant herein, was a resident of Baton Rouge who purchased MDMA from **C. LONDON** and sold MDMA to others.

38.     **JERRON ALBRITTON**, also known as "Out of Town Shorty" (hereinafter referred to as "**ALBRITTON**"), a defendant herein, was a resident of Baton Rouge who bought marijuana from **S. SMITH** and sold marijuana to others.

39.     **BARBARA DEYATTA JORDON** (hereinafter referred to as "**JORDON**"), a defendant herein, was a resident of Baton Rouge who assisted **C. LONDON** in the venture to buy and sell cocaine and MDMA.

## COUNT ONE
(Cocaine Conspiracy)

40.     Beginning on an exact date unknown to the Grand Jury, but on or before January 22, 2013, and continuing until in or about September, 2013, in the Middle District of Louisiana and elsewhere, the defendants herein,

**KELLY D. WILLIAMS**
**CHARLES C. LONDON**
**C'PRIEN C. NICHOLAS**
**DEMITORIS C. ALEXANDER**
**TACHI J. WILLIAMS**
**ARTEY D. FOULCARD**
**SYLVESTER S. SMITH**
**MYRON CHEVELLE HART**
**DONALD SANDERS, JR.**
**DERRICK D. HILLIARD**
**WILLIE C. LEWIS**
**SEKARI DAVIS WASHINGTON**
**CHRISTOPHER MONTRELL COOPER**
**CLARENCE WHITE**
**VERNON A. POWELL**
**DEVON D. FOSTER**
**KENNETH W. GARDNER**
**ERIC O'NEAL SELDERS**
**JAMES EDWARD ALLEN**

COLIN Y. KNOX
DWAN M. DELAVALLADE
KELVIN RONELLE JOHNSON
DEMARCUS D. NORRIS
GERRY EARL GRIFFIN
KIMBERLY ANN LONDON
GREGORY C. WALKER
D'ANDRE TAVIS SMITH
JEREMY JAMES WASHINGTON
RUDY McVAY CAIN, II
MYRON DERELL MILLS
JOHNNY C. ALEXANDER
ANDREA ROSE RUMORE
STEPHANIE A. ZERINGUE
SUSAN LYNN ZERINGUE
ASHLEY N. HEBERT

did conspire with each other and others, both known and unknown to the Grand Jury, to knowingly and intentionally distribute and possess with the intent to distribute a substance containing a detectable quantity of cocaine and a substance containing a detectable quantity of cocaine base, also known as "crack cocaine," Schedule II controlled substances, in violation of Title 21, United States Code, Section 841(a)(1), and did aid and abet the commission of said conspiracy.

41.     With respect to defendant **K. WILLIAMS**, the amount involved in the conspiracy attributable to him as a result of his own conduct, and the conduct of other conspirators reasonably foreseeable to him, is five (5) kilograms or more of a substance containing a detectable quantity of cocaine.

42.     With respect to defendant **C. LONDON**, the amount involved in the conspiracy attributable to him as a result of his own conduct, and the conduct of other conspirators reasonably foreseeable to him, is five (5) kilograms or more of a substance containing a detectable quantity of cocaine.

9

43.     With respect to defendant **NICHOLAS**, the amount involved in the conspiracy attributable to him as a result of his own conduct, and the conduct of other conspirators reasonably foreseeable to him, is five (5) kilograms or more of a substance containing a detectable quantity of cocaine.

44.     With respect to defendant **D. ALEXANDER**, the amount involved in the conspiracy attributable to him as a result of his own conduct, and the conduct of other conspirators reasonably foreseeable to him, is five (5) kilograms or more of a substance containing a detectable quantity of cocaine.

45.     With respect to defendant **T. WILLIAMS**, the amount involved in the conspiracy attributable to him as a result of his own conduct, and the conduct of other conspirators reasonably foreseeable to him, is five hundred (500) grams or more of a substance containing a detectable quantity of cocaine.

46.     With respect to defendant **FOULCARD**, the amount involved in the conspiracy attributable to him as a result of his own conduct, and the conduct of other conspirators reasonably foreseeable to him, is five (5) kilograms or more of a substance containing a detectable quantity of cocaine.

47.     With respect to defendant **S. SMITH**, the amount involved in the conspiracy attributable to him as a result of his own conduct, and the conduct of other conspirators reasonably foreseeable to him, is five (5) kilograms or more of a substance containing a detectable quantity of cocaine.

48.     With respect to defendant **HART**, the amount involved in the conspiracy attributable to him as a result of his own conduct, and the conduct of other conspirators

reasonably foreseeable to him, is two hundred and eighty (280) grams or more of a substance containing a detectable quantity of crack cocaine.

49.      With respect to defendant **D. SANDERS**, the amount involved in the conspiracy attributable to him as a result of his own conduct, and the conduct of other conspirators reasonably foreseeable to him, is five (5) kilograms or more of a substance containing a detectable quantity of cocaine.

50.      With respect to defendant **HILLIARD**, the amount involved in the conspiracy attributable to him as a result of his own conduct, and the conduct of other conspirators reasonably foreseeable to him, is five hundred (500) grams or more of a substance containing a detectable quantity of cocaine.

51.      With respect to defendant **LEWIS**, the amount involved in the conspiracy attributable to him as a result of his own conduct, and the conduct of other conspirators reasonably foreseeable to him, is five hundred (500) grams or more of a substance containing a detectable quantity of cocaine.

52.      With respect to defendant **COOPER**, the amount involved in the conspiracy attributable to him as a result of his own conduct, and the conduct of other conspirators reasonably foreseeable to him, is twenty-eight (28) grams or more of a substance containing a detectable quantity of crack cocaine.

53.      With respect to defendant **WHITE**, the amount involved in the conspiracy attributable to him as a result of his own conduct, and the conduct of other conspirators reasonably foreseeable to him, is twenty-eight (28) grams or more of a substance containing a detectable quantity of crack cocaine.

54.    With respect to defendant **POWELL**, the amount involved in the conspiracy attributable to him as a result of his own conduct, and the conduct of other conspirators reasonably foreseeable to him, is five hundred (500) grams or more of a substance containing a detectable quantity of cocaine.

55.    With respect to defendant **FOSTER**, the amount involved in the conspiracy attributable to him as a result of his own conduct, and the conduct of other conspirators reasonably foreseeable to him, is twenty-eight (28) grams or more of a substance containing a detectable quantity of crack cocaine.

56.    With respect to defendant **SELDERS**, the amount involved in the conspiracy attributable to him as a result of his own conduct, and the conduct of other conspirators reasonably foreseeable to him, is five hundred (500) grams or more of a substance containing a detectable quantity of cocaine.

57.    With respect to defendant **ALLEN**, the amount involved in the conspiracy attributable to him as a result of his own conduct, and the conduct of other conspirators reasonably foreseeable to him, is five hundred (500) grams or more of a substance containing a detectable quantity of cocaine.

58.    With respect to defendant **DELAVALLADE**, the amount involved in the conspiracy attributable to him as a result of his own conduct, and the conduct of other conspirators reasonably foreseeable to him, is five hundred (500) grams or more of a substance containing a detectable quantity of cocaine.

59.    With respect to defendant **JOHNSON**, the amount involved in the conspiracy attributable to him as a result of his own conduct, and the conduct of other conspirators

reasonably foreseeable to him, is five hundred (500) grams or more of a substance containing a detectable quantity of cocaine.

60.     With respect to defendant **NORRIS**, the amount involved in the conspiracy attributable to him as a result of his own conduct, and the conduct of other conspirators reasonably foreseeable to him, is five hundred (500) grams or more of a substance containing a detectable quantity of cocaine.

61.     With respect to defendant **GRIFFIN**, the amount involved in the conspiracy attributable to him as a result of his own conduct, and the conduct of other conspirators reasonably foreseeable to him, is twenty-eight (28) grams or more of a substance containing a detectable quantity of crack cocaine.

62.     With respect to defendant **WALKER**, the amount involved in the conspiracy attributable to him as a result of his own conduct, and the conduct of other conspirators reasonably foreseeable to him, is five hundred (500) grams or more of a substance containing a detectable quantity of cocaine.

63.     With respect to defendant **D. SMITH**, the amount involved in the conspiracy attributable to him as a result of his own conduct, and the conduct of other conspirators reasonably foreseeable to him, is five (5) kilograms or more of a substance containing a detectable quantity of cocaine.

64.     With respect to defendant **CAIN**, the amount involved in the conspiracy attributable to him as a result of his own conduct, and the conduct of other conspirators reasonably foreseeable to him, is five hundred (500) grams or more of a substance containing a detectable quantity of cocaine.

65.     With respect to defendant **MILLS**, the amount involved in the conspiracy attributable to him as a result of his own conduct, and the conduct of other conspirators reasonably foreseeable to him, is five hundred (500) grams or more of a substance containing a detectable quantity of cocaine.

A.     **OBJECT OF THE CONSPIRACY**

66.     The object of the conspiracy was to buy, sell, possess, transport, distribute, and profit from the sale of cocaine and crack cocaine in Louisiana and elsewhere.

B.     **MANNER AND MEANS OF ACCOMPLISHING THE CONSPIRACY**

67.     In order to accomplish the purpose of the conspiracy, the defendants used, and caused others to use, the manner and means set forth in the following paragraphs:

68.     **NICHOLAS** and **D. ALEXANDER** obtained kilograms of cocaine from sources in Texas and then distributed the cocaine to others in Baton Rouge and Gonzales.

69.     **NICHOLAS** and **D. ALEXANDER** hired couriers, including **SUSAN ZERINGUE, STEPHANIE ZERINGUE, HEBERT** and **RUMORE** to transport multi-kilograms of cocaine from Houston to Gonzales.

70.     **NICHOLAS** distributed large quantities of cocaine to **K. WILLIAMS, C. LONDON, HART, WALKER, T. WILLIAMS, D. SMITH, J. WASHINGTON, MILLS,** and **CAIN** and others for further distribution in Baton Rouge and elsewhere.

71.     **FOULCARD** obtained kilograms of cocaine from unknown sources and distributed such to others in Baton Rouge, including **K. WILLIAMS, C. LONDON,** and **HART**.

72.     **S. SMITH** obtained kilograms of cocaine from unknown sources and distributed such to others in Baton Rouge, including **K. WILLIAMS, C. LONDON,** and **HART**.

73.     **K. WILLIAMS**, **C. LONDON** and **HART**, using large sums of cash, purchased kilograms of cocaine from **FOULCARD, NICHOLAS,** and **S. SMITH** to distribute to others who converted some or all of the cocaine to crack cocaine and further distributed cocaine and crack cocaine in Baton Rouge and elsewhere.

74.     **D. SANDERS** brokered multi-kilogram cocaine sales from **NICHOLAS** to **K. WILLIAMS**, **C. LONDON** and **HART.**

75.     **K. WILLIAMS** utilized residences on Oriole Street and Simms Street in Baton Rouge, Louisiana and elsewhere, sometimes referred to as "stash houses" or "trap houses," to store, weigh, package and distribute cocaine and crack cocaine to others.

76.     **C. LONDON** used residences located on Tecumseh Street and Duke Street in Baton Rouge, Louisiana and elsewhere, sometimes referred to as "stash houses" or "trap houses" to store and distribute cocaine, crack cocaine, and MDMA to others.

77.     **K. WILLIAMS** utilized **K. LONDON'S** daycare center, Emanuel Daycare Center on Swan Avenue in Baton Rouge, to store cocaine and proceeds from cocaine.  **K. WILLIAMS** also distributed cocaine from the daycare on occasion.

78.     **K. WILLIAMS** and **C. LONDON** used other private residences on Marilyn, Zerlee and Calion Streets in Baton Rouge, White Haven Street in Zachary and elsewhere, to store cocaine, firearms, and proceeds from the sale of cocaine and crack cocaine to others.

79.     **K. WILLIAMS** and **C. LONDON** distributed large amounts of cocaine and converted some of the cocaine to crack cocaine for distribution to others including lower-level dealers for further distribution in Baton Rouge and elsewhere.

80.     **K. WILLIAMS** distributed various amounts of cocaine and crack cocaine to **POWELL, WHITE, GARDNER, FOSTER, ALLEN, SELDERS, COOPER**, and others for further distribution in the Baton Rouge area.

81.     **POWELL, WHITE** and **COOPER** assisted **K. WILLIAMS** by selling cocaine and crack cocaine under **K. WILLIAMS'** direction and independently to others and collecting the proceeds for **K. WILLIAMS.**

82.     **POWELL** sold cocaine and collected money at his residence on Simms Street in Baton Rouge for **K. WILLIAMS.**

83.     **WHITE** and **COOPER** sold cocaine and collected money for **K. WILLIAMS** from the stash house on Simms Street and elsewhere in Baton Rouge.

84.     **GARDNER, FOSTER, ALLEN**, and **SELDERS** distributed various amounts of cocaine and crack cocaine to unknown customers in Baton Rouge and elsewhere.

85.     **KNOX** and **HART** assisted **K. WILLIAMS** in the venture to buy and sell cocaine and crack cocaine by using threats of violence to protect the drug trafficking venture.

86.     **S. WASHINGTON** assisted **K. WILLIAMS** by hiding large sums of money at her residence on White Haven Road in Zachary and counting and delivering the money to **K. WILLIAMS** when needed for cocaine purchases.

87.     **C. LONDON** distributed various amounts of cocaine and crack cocaine to **JOHNSON, NORRIS, LEWIS, HILLIARD, DELAVALLADE, GRIFFIN,** and others for further distribution in the Baton Rouge area.

88.     **DELAVALLADE** assisted **C. LONDON** by converting cocaine to crack cocaine. Such conversion was done to test the quality of the cocaine and for future sales. **DELAVALLADE** also bought and sold substantial amounts of cocaine and crack cocaine.

16

89.     **JOHNSON** assisted **C. LONDON** by selling cocaine and crack cocaine under **C. LONDON's** direction and collecting the proceeds for **C. LONDON.**

90.     **JOHNSON, NORRIS, LEWIS, HILLIARD, DELAVALLADE,** and **GRIFFIN** distributed various amounts of cocaine and crack cocaine to customers in Baton Rouge and elsewhere.

91.     **K. LONDON** assisted **K. WILLIAMS** and **C. LONDON** in the cocaine trafficking venture by allowing **K. WILLIAMS** to use her daycare business on Swan Avenue in Baton Rouge and her residence on Calion Drive in Baton Rouge, and **C. LONDON** to use her residence on Calion Drive in Baton Rouge to store drugs and proceeds from drug sales.

92.     **WALKER, T. WILLIAMS, D. SMITH, J. WASHINGTON, MILLS,** and **CAIN** distributed cocaine and crack cocaine to customers in Gonzales, Baton Rouge, and elsewhere.

93.     **K. WILLIAMS** and **C. LONDON** possessed firearms in order to protect the cocaine, crack cocaine, and large sums of cash related to the drug trafficking venture.

94.     **K. WILLIAMS, HART** and **KNOX** used violence and threats of violence to protect the drug trafficking venture.

95.     **FOULCARD, NICHOLAS, S. SMITH, K. WILLIAMS, C. LONDON,** and others used vehicles, registered in their names and the names of others, to transport cocaine and drug trafficking proceeds.

96.     **K. WILLIAMS, C. LONDON, NICHOLAS, D. ALEXANDER, T. WILLIAMS, FOULCARD, S. SMITH, HART, D. SANDERS, HILLIARD, LEWIS, S. WASHINGTON, COOPER, WHITE, POWELL, FOSTER, GARDNER, SELDERS, ALLEN, KNOX, DELAVALLADE, JOHNSON, NORRIS, GRIFFIN, K. LONDON,**

17

WALKER, D. SMITH, J. WASHINGTON, CAIN, and MILLS used telephones, which were listed in their names and the names of others, to discuss, negotiate and arrange the purchase and sale of cocaine.  They also used telephones to facilitate the exchange of monies related to the buying and selling of cocaine and crack cocaine.

97.    WILLIAMS, C. LONDON, NICHOLAS, D. ALEXANDER, T. WILLIAMS, FOULCARD, S. SMITH, HART, D. SANDERS, HILLIARD, LEWIS, S. WASHINGTON, COOPER, WHITE, POWELL, FOSTER, GARDNER, SELDERS, ALLEN, KNOX, DELAVALLADE, JOHNSON, NORRIS, GRIFFIN, K. LONDON, WALKER, D. SMITH, J. WASHINGTON, CAIN, and MILLS used public and private places to arrange cocaine transactions and thereafter carry out the exchange of cocaine, crack cocaine, and cash from the drug sales.

98.    WILLIAMS, C. LONDON, NICHOLAS, D. ALEXANDER, T. WILLIAMS, FOULCARD, S. SMITH, HART, D. SANDERS, HILLIARD, LEWIS, S. WASHINGTON, COOPER, WHITE, POWELL, FOSTER, GARDNER, SELDERS, ALLEN, KNOX, DELAVALLADE, JOHNSON, NORRIS, GRIFFIN, K. LONDON, WALKER, D. SMITH, J. WASHINGTON, CAIN, MILLS, J. ALEXANDER, RUMORE, STEPHANIE ZERINGUE, SUSAN ZERINGUE, and HEBERT took actions to evade law enforcement and protect the drug trafficking venture, including talking in code, looking out for and warning each other of police presence in the area and hiding the cocaine, crack cocaine and cash proceeds.

18

C.      **ACTS IN FURTHERANCE OF THE CONSPIRACY**

99.     On or about the following dates, in furtherance of the conspiracy and to accomplish its purposes, the defendants herein did commit, and did cause to be committed, acts in the Middle District of Louisiana and elsewhere, which included the acts set forth in the following paragraphs.

100.    On January 22, 2013, **K. WILLIAMS** distributed two ounces of crack cocaine and **C. LONDON** distributed MDMA from the stash house on Oriole Street.

101.    On January 30, 2013, **C. LONDON** agreed to distribute two ounces of crack cocaine, but advised that **HART** would have to "cook it" first.  **C. LONDON** advised that **HART** would complete the transaction.  Thereafter, **HART** distributed two ounces of crack cocaine from the stash house on Oriole Street.

102.    On March 6, 2013, **K. WILLIAMS** distributed three ounces of crack cocaine from **K. LONDON's** house on Calion Street.

103.    On March 29, 2013, **C. LONDON** agreed to sell one ounce of cocaine and 500 MDMA tablets to a customer and advised that **C. LONDON** would call **JOHNSON** and have him take care of it.

104.    On March 29, 2013, **JOHNSON**, acting under the direction of **C. LONDON**, distributed one ounce of cocaine and 500 MDMA tablets from his house on Tecumseh Street.

105.    On April 18, 2013, **K. WILLIAMS** told **S. WASHINGTON** to bring him $16,000 of drug proceeds.

106.    On April 18, 2013, **FOULCARD** delivered a half kilogram of cocaine to **K. WILLIAMS** at the stash house on Simms Street.

107.    On April 18, 2013, **S. SMITH** delivered two kilograms of cocaine to **C. LONDON** at his residence on Marilyn Drive.

108.    On April 18, 2013, **C. LONDON** distributed 250 MDMA tablets and two ounces of cocaine from his residence on Marilyn Drive.

109.    On April 19, 2013, **LEWIS** called **K. WILLIAMS** and warned him that police were in the area of Simms Street.

110.    On April 19, 2013, **K. WILLIAMS** called **COOPER** and told him to leave the house on Simms Street and move the truck because police were in the area. **K. WILLIAMS** told **COOPER** to walk down the street and he would come and pick him up.

111.    On April 19, 2013, **K. WILLIAMS** called **FOSTER** and told him to get out because police were in the area.

112.    On April 19, 2013, **K. WILLIAMS** arranged to rent the house on Oriole Street again to use as a stash house because there was too much traffic and police presence on Simms Street.

113.    On April 20, 2013, **K. WILLIAMS** told **K. LONDON** that he had hidden drug proceeds inside the air conditioner unit in the daycare center.

114.    On April 22, 2013, **K. WILLIAMS** and **S. SMITH** discussed prices for kilograms of cocaine and **S. SMITH** offered to reduce the price if **K. WILLIAMS** purchased kilogram quantities of cocaine from him consistently.

115.    On April 23, 2013, **K. WILLIAMS** asked **K. LONDON** to look for his large scale, "the big one."

116.    On April 24, 2013, **S. SMITH** told **C. LONDON** that he was coming over to pick up the money from the previous sale of two kilograms of cocaine because he was getting ready to leave town.

117.    On April 24, 2013, **K. WILLIAMS** and **WHITE**  discussed how much cocaine **WHITE** had sold, and **K. WILLIAMS** instructed **WHITE**  to get the cocaine and "spin it" into crack cocaine.

118.    On April 25, 2013, **K. WILLIAMS** told **COOPER** to leave the house on Simms Street and go and sell cocaine out of the house on Blount Road because of the police presence around Simms Street.

119.    On April 25, 2013, **C. LONDON** and **DELAVALLADE** arranged a four ounce cocaine transaction.

120.    On April 25, 2013, **S. SMITH** delivered cocaine to **JOHNSON** for **C. LONDON** and **HART**.

121.    On April 25, 2013, **D. SANDERS** told **C. LONDON** that he had found a new source (**NICHOLAS**) for **C. LONDON**, who was willing to sell kilograms of cocaine to **C. LONDON** for $34,500 per kilogram and would reduce the price if **C. LONDON** continued to buy from him.

122.    On April 26, 2013, **C. LONDON** and **HART** discussed the quality of cocaine obtained from **S. SMITH** and converting it to crack cocaine.

123.    On April 26, 2013, **K. WILLIAMS** and **S. WASHINGTON** discussed the amount of money that **K. WILLIAMS** made selling drugs the previous night.  **K. WILLIAMS** instructed **S. WASHINGTON** to get the money out of the dresser and put it in the closet.

124.    On April 7, 2013, **K. WILLIAMS** instructed **S. WASHINGTON** to bring him $17,000 so that he could call **FOULCARD** and tell him to bring cocaine.

125.    On April 26, 2013, **K. WILLIAMS** instructed **COOPER** where to find his cocaine in **K. LONDON'S** daycare and told him to bring him "14."

126.    On April 27, 2013, **K. WILLIAMS** and **HART** discussed purchasing cocaine from **FOULCARD**.

127.    On April 27, 2013, **K. WILLIAMS** and **FOULCARD** arranged a sale of cocaine to **K. WILLIAMS** and **HART**.

128.    On April 27, 2013**, FOULCARD** delivered cocaine to **HART** and **K. WILLIAMS** in Baton Rouge.

129.    On April 27, 2013, **FOULCARD** and **K. WILLIAMS** discussed the quality of the cocaine delivered that day.

130.    On April 27, 2013, **K. WILLIAMS** instructed **COOPER** to locate cocaine in his hiding place in the stash house on Oriole Street and distribute it to three customers.

131.    On April 29, 2013, **C. LONDON** and **NORRIS** negotiated the sale of cocaine and arranged for **NORRIS** to pick it up from **JOHNSON's** house on Tecumseh Street and to leave the money with **JOHNSON**.

132.    On April 30, 2013, **S. SMITH** delivered eleven ounces of cocaine to **C. LONDON** and one kilogram of cocaine to **HILLIARD** in Baton Rouge.

133.    On May 1, 2013, **FOULCARD** delivered one kilogram of cocaine to **K. WILLIAMS** in Baton Rouge.

134.     On May 1, 2013, while **C. LONDON** and **HILLIARD** discussed obtaining cocaine from **S. SMITH**, **HILLIARD** stated that he only had a few ounces left from the last kilogram of cocaine that he had gotten from **S. SMITH**.

135.     On May 1, 2013, **K. WILLIAMS** and **SELDERS** negotiated a sale of cocaine.

136.     On May 2, 2013, **SELDERS** picked up cocaine from **K. WILLIAMS** at the stash house on Oriole Street.

137.     On May 2, 2013, in anticipation of a pending cocaine purchase from **FOULCARD**, **K. WILLIAMS** had **S. WASHINGTON** bring him $23,000 that was hidden in their residence on White Haven Road.

138.     On May 3, 2013, **C. LONDON** and **D. SANDERS** arranged a sale of nine ounces of cocaine from **D. SANDERS** and **NICHOLAS** to **C. LONDON**.

139.     On May 3, 2013, **C. LONDON** and **DELAVALLADE** travelled to Gonzales where they purchased cocaine from **D. SANDERS** and **NICHOLAS**.

140.     On May 3, 2013, **K. WILLIAMS** and **FOULCARD** arranged a two kilogram cocaine transaction to occur later that day.

141.     On May 3, 2013, **FOULCARD** delivered cocaine to **K. WILLIAMS** and **C. LONDON** at the stash house on Oriole Street.

142.     On May 3, 2013, **JORDON** transported $19,000 in drug proceeds for **C. LONDON** to their residence on Marilyn Drive.

143.     On May 4, 2013, **FOULCARD** delivered one and a half kilograms of cocaine to **K. WILLIAMS** for **K. WILLIAMS** and **HART** at the stash house on Oriole Street.

144.    On May 4, 2013, **FOULCARD** travelled on I-10 in Baton Rouge with over $45,000 in U.S. currency in his possession, which was money that he had just collected from **K. WILLIAMS** and **HART** for cocaine during a meeting at the stash house on Oriole Street.

145.    On May 5, 2013, **C. LONDON** agreed to sell two ounces of cocaine to **JOHNSON** and later discussed how well **JOHNSON** was able to convert it to crack cocaine.

146.    On May 8, 2013, in anticipation of a pending cocaine purchase, **K. WILLIAMS** had **S. WASHINGTON** count the money that was hidden in their residence on White Haven Road.  After counting the money, **S. WASHINGTON** advised **K. WILLIAMS** that he had $35,000 hidden in the closet at the residence.

147.    On May 8, 2013, **D. SANDERS** and **C. LONDON** arranged a multi-kilogram cocaine purchase from **NICHOLAS**.

148.    On May 8, 2013, **C. LONDON** told **DELAVALLADE** that he needed him to ride with him the following day to purchase cocaine so that **DELAVALLADE** could check the quality of the cocaine, like last time.

149.    On May 9, 2013, **LEWIS** told **C. LONDON** that he wanted **C. LONDON** to get nine ounces of cocaine for him from **NICHOLAS** and arranged to bring the money to **C. LONDON** for the cocaine.

150.    On May 9, 2013, **HILLIARD** told **C. LONDON** that he wanted **C. LONDON** to get twenty-five ounces of cocaine for him from **NICHOLAS** and arranged to bring the money to **C. LONDON** for the cocaine.

151.    On May 9, 2013, **C. LONDON** and **DELAVALLADE** travelled to Gonzales where they purchased two kilograms of cocaine from **SANDERS** and **NICHOLAS**.

152. Later that same day, on May 9, 2013, **C. LONDON** returned to Gonzales and purchased another two kilograms of cocaine from **SANDERS** and **NICHOLAS**. The purchase was for himself and others, including **HART, LEWIS, HILLIARD** and **DELAVALLADE**.

153. On May 9, 2013, **C. LONDON** told **JOHNSON** that he had just purchased four kilograms of cocaine from **NICHOLAS** and that they looked great, but he wouldn't know until **DELAVALLADE** tested them. **C. LONDON** told **JOHNSON** to bring the scale and bags to him at the stash house on Duke Street.

154. On May 9, 2013, **C. LONDON** sold a half kilogram of cocaine to **HART** at a residence on Pamela Drive in Baton Rouge.

155. On May 9, 2013, **K. WILLIAMS** called **COOPER** and warned him that undercover police officers were out so not to let anyone pull up and purchase crack cocaine.

156. On May 10, 2013, **C. LONDON** and **D. SANDERS** arranged another two kilogram purchase of cocaine from **NICHOLAS**.

157. On May 10, 2013, **C. LONDON** and **K. WILLIAMS** travelled to Gonzales where they purchased two kilograms of cocaine from **SANDERS** and **NICHOLAS**.

158. On May 10, 2013, **GRIFFIN** ordered seven ounces of cocaine from **C. LONDON**, and **GRIFFIN** delivered $7,000 to **K. LONDON** for the cocaine. **C. LONDON** told **GRIFFIN** that he did not know if **NICHOLAS** would open a kilogram in order to sell seven ounces.

159. On May 10, 2013, **C. LONDON** and **NORRIS** negotiated the sale of a half kilogram of cocaine and arranged for **NORRIS** to pick it up from **JOHNSON'S** house on Tecumseh Street.

160.     On May 10, 2013, **C. LONDON** and **GARDNER** arranged a sale of cocaine. In subsequent calls, **GARDNER** complained about the quality of the cocaine that he had gotten earlier and **C. LONDON** agreed to take it back and replace it.

161.     On May 10, 2013, **C. LONDON** distributed two ounces of cocaine from a residence located on 21st Street in Baton Rouge.

162.     On May 12, 2013, **DELAVALLADE** ordered cocaine from **C. LONDON** to sell to **DELAVALLADE's** customer from New Orleans.

163.     On May 13, 2013, **HILLIARD** told **C. LONDON** that he wanted **C. LONDON** to get one kilogram of cocaine for him from **NICHOLAS** and arranged to bring the money to **C. LONDON** for the cocaine.

164.     On May 13, 2013, **C. LONDON** and **D. SANDERS** arranged another two kilogram purchase of cocaine from **NICHOLAS**.

165.     On May 14, 2013, **C. LONDON** travelled to Gonzales where he purchased cocaine from **D. SANDERS** and **NICHOLAS** for himself, **K. WILLIAMS, HILLIARD, HART, GRIFFIN** and others.

166.     On May 14, 2013, **C. LONDON** asked **HILLIARD** how much money **HILLIARD** had given him for **HILLIARD's** kilogram of cocaine. In response, **HILLIARD** said $34,000 and explained that he owed **C. LONDON** another $1,000.

167.     On May 14, 2013, **WHITE** told **K. WILLIAMS** that he was hiding the crack cocaine in a pickle jar under the house and cleaning out the house because the police were in the area.  **K. WILLIAMS** instructed **WHITE** to turn off all of the lights and close the gate.

168.     On May 14, 2013, **GRIFFIN** ordered a half kilogram of cocaine from **C. LONDON** and arranged to pick it up later that day.

169.    On May 14, 2013, **GRIFFIN** and **C. LONDON** discussed the quality of the cocaine that **GRIFFIN** had gotten from **C. LONDON** that day and **GRIFFIN** said that he converted 27 grams of cocaine into 47 grams of crack cocaine.

170.    On May 16, 2013, in anticipation of a pending cocaine purchase, **S. WASHINGTON** delivered $31,000 from their residence on White Haven Road in Zachary to **K.WILLIAMS** at a residence on Zerlee Street in Baton Rouge.

171.    On May 17, 2013, **K. WILLIAMS** warned **POWELL** that the police were in the area and instructed him to clean up the house.

172.    On May 19, 2013, **C. LONDON** and **LEWIS** arranged a sale of five ounces of cocaine.

173.    On May 19, 2013, **C. LONDON** told **HILLIARD** that they would get cocaine from **NICHOLAS** the following day and arranged for **HILLIARD** to bring his money to **C. LONDON**.

174.    On May 20, 2013, **K. WILLIAMS** and **NICHOLAS** discussed engaging in a cocaine transaction that day and cutting **D. SANDERS** out of the deal.

175.    On May 20, 2013, **NICHOLAS** told **K. WILLIAMS** that **D. ALEXANDER** said to give him an hour and then **NICHOLAS** and **D. ALEXANDER** would go get the cocaine. **NICHOLAS** confirmed that **K. WILLIAMS** and **C. LONDON** wanted to purchase four kilograms of cocaine.

176.    On May 20, 2013, **C. LONDON** and **K. WILLIAMS** travelled to Gonzales where they purchased four kilograms of cocaine from **NICHOLAS** for themselves and others, including **HART** and **HILLIARD**.

177.    On May 20, 2013, **NICHOLAS** called **K. WILLIAMS** to check on the quality of the cocaine he had just picked up and **K. WILLIAMS** advised that he was in the process of converting some of it to crack cocaine, and that it was going well.

178.    On May 20, 2013, **C. LONDON** told **HILLIARD** to come to the stash house at Duke Street to pick up the cocaine.

179.    On May 23, 2013, **K. WILLIAMS** and **HART** travelled to Gonzales where they purchased at least one kilogram of cocaine from **NICHOLAS.**

180.    On May 24, 2013, **K. WILLIAMS** and **C. LONDON** discussed the quality of the kilograms of cocaine recently obtained from **NICHOLAS** in packaging stamped "Midas" and the fact that it did not convert to crack cocaine with the same ratio of return as the kilograms of cocaine previously purchased from **NICHOLAS** in packaging that was stamped with the number "7."

181.    On May 27, 2013, **C. LONDON** and **JOHNSON** discussed converting cocaine to crack cocaine.

182.    On May 27, 2013, **C. LONDON** and **NORRIS** negotiated a sale of cocaine.

183.    On May 28, 2013, **C. LONDON** and **DELAVALLADE** negotiated a sale of cocaine.

184.    On May 29, 2013, **K. WILLIAMS** and **FOSTER** arranged the sale and conversion of two ounces of cocaine to crack cocaine.

185.    On May 30, 2013, **K. WILLIAMS** and **SELDERS** negotiated a sale of cocaine.

186.    On May 31, 2013, **C. LONDON** travelled to Gonzales where he purchased at least two kilograms of cocaine from **NICHOLAS.**

28

187.    On May 31, 2013, **K. WILLIAMS** and **C. LONDON** discussed the price that **NICHOLAS** had charged per kilogram for the cocaine that **C. LONDON** had purchased that morning.  **C. LONDON** advised that it was $33,000 per kilogram, and that **NICHOLAS** planned to deliver an additional two kilograms for **K. WILLIAMS,** another half kilogram for **C. LONDON,** and whatever amount **HART** ordered, later that day, to the stash house on Duke Street.

188.    On May 31, 2013, **NICHOLAS** delivered at least two kilograms of cocaine to the stash house on Duke Street for **K. WILLIAMS, C. LONDON, HART, LEWIS, HILLIARD**, and others.

189.    On May 31, 2013, **LEWIS** told **C. LONDON** that **NICHOLAS** was at the stash house delivering the cocaine.  **C. LONDON** told **LEWIS** that he was getting a half kilogram from **NICHOLAS** and that **LEWIS** could take his seven ounces out of it.

190.    On May 31, 2013, **K. WILLIAMS** agreed to sell **ALLEN** a half kilogram of cocaine and arranged for **ALLEN** to pick it up.  After **ALLEN** picked up the cocaine, **ALLEN** called **K. WILLIAMS** and complained that the amount was short.  **K. WILLIAMS** disagreed and told **ALLEN** that he had weighed it in front of **ALLEN** and it weighed 506 grams with the bag.

191.    On May 31, 2013, **C. LONDON** and **HILLIARD** discussed the quality of the cocaine that they purchased from **NICHOLAS** that day, and **HILLIARD** said that he had opened his but had not tested it yet.

192.    On June 1, 2013, **C. LONDON** travelled to Gonzales where he purchased a half kilogram of cocaine from **NICHOLAS.**

193.    On June 1, 2013, **FOSTER** ordered six ounces of cocaine from **K. WILLIAMS**.

194.    On June 1, 2013, **K. WILLIAMS** instructed **WHITE** that he had arranged a cocaine sale and for **WHITE** to weigh the cocaine for the customer who was coming to get it.

195.    On June 2, 2013, **NICHOLAS** delivered one kilogram of cocaine to **C. LONDON** and picked up MDMA in Baton Rouge.

196.    On June 3, 2013, **C. LONDON** agreed to sell one kilogram of cocaine to **NORRIS** after he got it from **NICHOLAS** the following day.

197.    On June 3, 2013, **K. WILLIAMS** and **C. LONDON** discussed that **ALLEN** was making negative comments to others, including their customers, about their cocaine prices. **K. WILLIAMS** said that he was going to tell **HART** to either rob **ALLEN** or have **K. WILLIAMS** rob **ALLEN**.

198.    On June 3, 2013, **K. WILLIAMS** and **HART** discussed that **ALLEN** was making negative comments about them. **K. WILLIAMS** said that he was going to have the people that ride around with **ALLEN** kill him and that they were going to have a war. **HART** said that if **ALLEN** continued to talk about him, he would send shooters over there to rob and shoot **ALLEN** and his people.

199.    On June 4, 2013, **C. LONDON** and **HILLIARD** arranged for **HILLIARD** to purchase one kilogram of cocaine from **NICHOLAS** at the stash house on Duke Street later that day.

200.    On June 4, 2013, **HILLIARD** was stopped by law enforcement in the vicinity of North Foster Drive in Baton Rouge in possession of a black backpack containing $30,640.

201.    On June 4, 2013, **NICHOLAS** delivered cocaine to **C. LONDON** in Baton Rouge.

202.   On June 4 and 5, 2013, **K. WILLIAMS** and **HART** discussed robbing and killing **ALLEN.**

203.   On June 5, 2013, **K. WILLIAMS** told **COOPER** that **SELDERS** was outside and directed **COOPER** to deliver 77 grams of cocaine and seven grams of crack cocaine to **SELDERS**, and that **SELDERS** would pay him $3600 and owe $600.

204.   On June 5, 2013, **SELDERS** told **K. WILLIAMS** that he was with **COOPER** and wanted an additional amount of cocaine.  **K. WILLIAMS** instructed **COOPER** to increase the amount for **SELDERS** to 91 grams of cocaine and seven grams of crack cocaine and to collect $4200 from **SELDERS**.

205.   On June 6, 2013, **HART** told **K. WILLIAMS** to watch the news the following morning because he and **KNOX** were going to take care of **ALLEN.**

206.   On June 7, 2013, **KNOX** and **HART** told **K. WILLIAMS** that they needed a car because they were ready to make the hit on **ALLEN**.  **K. WILLIAMS** asked if they had located **ALLEN's** house because that is where he believed the money was located.

207.   On June 7, 2013, **KNOX** and **K. WILLIAMS** discussed using crack cocaine to rent a "random whip" (car) from a crack addict to use to make the hit on **ALLEN**.

208.   On June 7, 2013, **K. WILLIAMS** told **KNOX** that he had located a car for him to use to make the hit on **ALLEN**, but that he could not get to it because of police presence in the area.

209.   On June 7, 2013, **COOPER** and **HART** warned **K. WILLIAMS** not to go to the stash house on Oriole Street because BRAVE team police units were at the house.

210.    On June 7, 2013, **HART** and **K. WILLIAMS** discussed that **ALLEN** must have called the police after he saw **HART** and **KNOX** together and knew what they were coming to do.

211.    On June 8, 2013, **K. WILLIAMS** told **KNOX** to go back into the "hole and lay low" because law enforcement was aware of their plan for the hit on **ALLEN**. **K. WILLIAMS** told **KNOX** that the police were aware of his house on Oriole Street so he had snuck over there that morning and flushed his drugs and gotten rid of the guns. **K. WILLIAMS** opined that it was a good thing the police told him that they knew about it or they would have gone through with the hit, and the police would have caught them since the police already knew about it.

212.    On June 7 and 8, 2013, **C. LONDON** and **NICHOLAS** arranged a two kilogram sale of cocaine.

213.    On June 8, 2013, **NICHOLAS** delivered cocaine to **LONDON** in Baton Rouge.

214.    On June 8, 2013, **K. WILLIAMS** instructed **POWELL** to put some cocaine and crack cocaine together, deliver it to a customer, and collect $3,300 for it.

215.    On June 9, 2013, **NICHOLAS** delivered one kilogram of cocaine to **K. WILLIAMS** in the parking lot at the Lamar Dixon car show in Gonzales.

216.    On June 9, 2013, **NICHOLAS** agreed to sell **DELAVALLADE** a half kilogram of cocaine for $16,500.

217.    On June 12, 2013, **C. LONDON** requested one and a half kilograms of cocaine from **NICHOLAS**, but **NICHOLAS** only had a half kilogram. **NICHOLAS** agreed to deliver the half kilogram of cocaine to **C. LONDON** when **NICHOLAS** came to Baton Rouge later that day.

218.    On June 12, 2013, **NICHOLAS** delivered cocaine to **LONDON** at the stash house on Duke Street.

219.    On June 13, 2013, **K. WILLIAMS** agreed to sell one ounce of cocaine to **GARDNER**. **K. WILLIAMS** immediately called **POWELL** and told him that **GARDNER** was coming and directed him to sell one ounce of cocaine to **GARDNER**.

220.    On June 14, 2013, **K. WILLIAMS** called **S. WASHINGTON** and told her to go and pick up money from **POWELL** on Simms Street.  Immediately thereafter, **K. WILLIAMS** called **POWELL** and told him that **S. WASHINGTON** was coming to pick up the money.

221.    On June 14, 2013, **NICHOLAS** and **WALKER** agreed to a sale of one kilogram of cocaine to be delivered the following day by **NICHOLAS**.

222.    On June 16, 2013, **NICHOLAS** agreed to sell one kilogram of cocaine to **C. LONDON**.

223.    On June 16, 2013, **NICHOLAS** delivered one kilogram of cocaine to **C. LONDON** in Baton Rouge.

224.    On June 17, 2013, **D. SMITH** told **NICHOLAS** that he already had a half kilogram of cocaine but wanted to come and purchase another half from **NICHOLAS** because he had a sale for a whole kilogram of cocaine.  **NICHOLAS** agreed to sell **D. SMITH** a half kilogram of cocaine.

225.    On June 17, 2013, **D. SMITH** purchased cocaine from **NICHOLAS** at **NICHOLAS'** residence in Gonzales.

226.    On June 17, 2013, **K. WILLIAMS** asked **NICHOLAS** for cocaine, but **NICHOLAS** said all he had was nine ounces and that he had to keep that for himself in order to make some money.  **NICHOLAS** told **K. WILLIAMS** that if **T. WILLIAMS** did not sell his

33

cocaine today, **NICHOLAS** would be able to sell it to him because **D. ALEXANDER** had told him to do something with it.

227. On June 17, 2013, **K. WILLIAMS** and **GARDNER** negotiated a sale of cocaine.

228. On June 17, 2013, **K. WILLIAMS** told **POWELL** that **GARDNER** was coming and instructed him to sell to **GARDNER** 28 grams of cocaine.

229. On June 17, 2013, **K. WILLIAMS** told **POWELL** that **SELDERS** was coming and instructed him to give **SELDERS** three and a half ounces of cocaine.

230. On June 19, 2013, **NICHOLAS** told **C. LONDON** to place his order for cocaine because he did not get a lot, and **C. LONDON** ordered one and a half kilograms of cocaine.

231. On June 19, 2013, **K. WILLIAMS** asked **NICHOLAS** if he had any cocaine yet, and **NICHOLAS** responded that it would be the following day but that he did not get a lot. **K. WILLIAMS** said that he needed one kilogram of cocaine for sure.

232. On June 20, 2013, **NICHOLAS** delivered cocaine to **K. WILLIAMS** and **C. LONDON** at the stash house on Duke Street.

233. On June 21, 2013, **T. WILLIAMS** told **NICHOLAS** that he needed six ounces of cocaine. **NICHOLAS** suggested that they each pay half for one kilogram of cocaine and **T. WILLIAMS** could sell his six ounces out of his half. **T. WILLIAMS** agreed.

234. On June 25, 2013, **K. WILLIAMS** complained to **NICHOLAS** about the quality of the cocaine that he had been getting from **NICHOLAS**. **K. WILLIAMS** told **NICHOLAS** that his customers "had been crying" because it was hard to get the cocaine to convert to crack cocaine properly. **K. WILLIAMS** said that it converted differently than the last cocaine which was marked with a number "7" on it.

235.    On June 25, 2013, **K. WILLIAMS** and **HART** discussed finding a new source of cocaine, even if they had to pay more money, because they were worried that law enforcement was investigating **NICHOLAS**.  **K. WILLIAMS** stated that if the police were investigating **NICHOLAS**, he did not want to be **NICHOLAS'** main attraction, because the police would catch him too.

236.    On June 25, 2013, **D. SMITH** complained to **NICHOLAS** about the quality of cocaine that he had recently gotten from **NICHOLAS**.  **NICHOLAS** told **D. SMITH** that **HART** did not complain about the cocaine that he had gotten at the same time and that **HART** had called back and wanted more of it.

237.    On June 25, 2013, **K. WILLIAMS** and **GARDNER** negotiated a sale of cocaine.

238.    On June 27, 2013, **K. WILLIAMS** ordered one kilogram of cocaine from **NICHOLAS**, who agreed to deliver it later that day.

239.    On June 27, 2013, **K. WILLIAMS** told **S. WASHINGTON** to go to their house and get $29,000 for him within the hour and bring it to him on Duke Street.

240.    On June 29, 2013, **C. LONDON** told **NICHOLAS** that he wanted to purchase two kilograms of cocaine the next day.

241.    On June 30, 2013, **NICHOLAS** told **C. LONDON** that he only had one kilogram of cocaine left and **C. LONDON** said that he wanted it.  **NICHOLAS** called **C. LONDON** back a short while later and told him that he was about to bring the kilogram of cocaine to him.

242.    On July 1, 2013, **POWELL** informed **K. WILLIAMS** that he was almost out of cocaine, and **K. WILLIAMS** told **POWELL** to go to the house on Oriole Street and get some with which to work.

35

243.    On July 1, 2013, **C. LONDON** ordered a half kilogram of cocaine from **NICHOLAS**.   **NICHOLAS** called **C. LONDON** and told him that he had the half kilogram and would hold it for **C. LONDON** but that they were shutting down sales for a little while after Saturday because too much was happening.

244.    On July 2, 2013, **NICHOLAS** and **MILLS** agreed to a sale of one kilogram of cocaine and discussed a new source of cocaine.

245.    On July 3, 2013, **C. LONDON** told **NICHOLAS** that he needed to get some cocaine soon because he was out and that he had $132,000 to purchase cocaine.

246.    On July 3 and 4, 2013, **NICHOLAS** and **STEPHANIE ZERINGUE** agreed that she and **HEBERT** would come to Gonzales in order to travel to Houston the following day to transport cocaine back to Gonzales.

247.    On July 4, 2013, **NICHOLAS** told **STEPHANIE ZERINGUE** that he had a hotel room for her and **HEBERT** in Gonzales for the trip the following day and for them to meet him in Donaldsonville to get the key card for the room.

248.    After meeting with **STEPHANIE ZERINGUE** in Donaldsonville, **NICHOLAS** determined that **STEPHANIE ZERINGUE** would not be able to drive for him and arranged to have **HEBERT** and **SUSAN ZERINGUE** go instead.

249.    On July 5, 2013, under the constant direction of **NICHOLAS, HEBERT** and **SUSAN ZERINGUE** travelled from the Highland Inn in Gonzales to Houston for the purpose of transporting cocaine back to Louisiana from Houston.

250.    On July 5, 2013, **NICHOLAS** and **J. ALEXANDER** travelled in a separate vehicle in tandem with **HEBERT** and **SUSAN ZERINGUE** from the Highland Inn in Gonzales

to Houston.  In Houston, **NICHOLAS** and **J. ALEXANDER** purchased cocaine to be transported back to Louisiana by **HEBERT** and **SUSAN ZERINGUE**.

251.    On July 5, 2013, **C. LONDON** told **NICHOLAS** that he wanted to get two kilograms of cocaine that day and two more kilograms the following day.   **NICHOLAS** replied that he could provide all four kilograms of cocaine that night.

252.    On July 6, 2013, **NICHOLAS** told **C. LONDON** about police helicopters following him and that he had to let the heat cool off before he could deliver the cocaine to him. **NICHOLAS** told **C. LONDON** that he would deliver the cocaine the following day after church.

253.    On July 7, 2013, **NICHOLAS** delivered four kilograms of cocaine to **C. LONDON** at the stash house on Duke Street.

254.    On July 8, 2013, **CAIN** asked **NICHOLAS** what the price would be for five kilograms of cocaine, and **NICHOLAS** told **CAIN** that **CAIN** would have to ask **T. WILLIAMS**.

255.    Later on July 8, 2013, **NICHOLAS** told **CAIN** that he was on his way to deliver cocaine and asked if "Red" had arrived yet.  **CAIN** confirmed that "Red" was there and **NICHOLAS** advised he would be there in ten minutes.

256.    Later on July 8, 2013, **NICHOLAS** and **D. ALEXANDER** told **CAIN** to tell his customer, "Red," to check the wrappers when he cut into the kilograms of cocaine because the wrappers contained "cookies" (samples) of crack cocaine in them.

257.    On July 8, 2013, **NICHOLAS** told **MILLS** that he only had three kilograms of cocaine left and **MILLS** said that he wanted them.

258.    On July 9, 2013, **K. WILLIAMS** ordered one kilogram of cocaine from **FOULCARD**. **K. WILLIAMS** and **FOULCARD** agreed to meet at a different place, **K. WILLIAMS'** cousin's shop near John's Seafood, to conclude the transaction.

259.    On July 9, 2013, **FOSTER** asked **K. WILLIAMS** if he had any cocaine for sale. **K. WILLIAMS** told **FOSTER** that he was not purchasing cocaine from **NICHOLAS** anymore because there were police helicopters flying over his house, so he was going back to **FOULCARD**. **K. WILLIAMS** explained that although **FOULCARD** was more expensive, he was safer than **NICHOLAS**, who was too hot.

260.    On July 9, 2013, **FOULCARD** delivered cocaine to **K. WILLIAMS** at a shop in Baton Rouge.

261.    On July 10, 2013, **K. WILLIAMS** complained to **FOULCARD** about the quality of the kilogram of cocaine and that it was short 10 grams.

262.    On July 14, 2013, **T. WILLIAMS** and **NICHOLAS** discussed that **NICHOLAS** had sold one kilogram of cocaine to "Wood" for **T. WILLIAMS**, who was out of town. **T. WILLIAMS** asked **NICHOLAS** to send him some money because he had not brought enough with him. **NICHOLAS** told **T. WILLIAMS** that he didn't have any extra money to send but that he would send **T. WILLIAMS'** $500 profit from the sale. **T. WILLIAMS** asked **NICHOLAS** to get another $500 from his father, **D. ALEXANDER**, and send it to him.

263.    On July 14, 2013, **D. ALEXANDER** told **NICHOLAS** that **T. WILLIAMS** had told him that **NICHOLAS** was going to send **T. WILLIAMS** money. **NICHOLAS** told **D. ALEXANDER** that **T. WILLIAMS** had asked him for extra money, but he was only sending him the $500 from the cocaine sale to "Wood" because **T. WILLIAMS** did not pay him back the last time and that **T. WILLIAMS** wanted **NICHOLAS** to get $500 from **D. ALEXANDER**

38

to send him.  **D. ALEXANDER** told **NICHOLAS** to only send **T. WILLIAMS** the $500 from the sale to "Wood."

264.    On July 14, 2013, **CAIN** asked **NICHOLAS** if he could purchase kilogram quantities of cocaine from **NICHOLAS** since **T. WILLIAMS** was on the road and out of town.

265.    Shortly thereafter, **T. WILLIAMS** told **NICHOLAS** that he needed two kilograms of cocaine to complete the cocaine sale.  **NICHOLAS** told **T. WILLIAMS** that they were out of cocaine and **T. WILLIAMS** got upset because **D. ALEXANDER** had told him that he was holding cocaine for him.  **T. WILLIAMS** stated that he would call **D. ALEXANDER** and find out for himself.

266.    On July 14, 2013, **T. WILLIAMS** called **NICHOLAS** again and stated that **D. ALEXANDER** had just told him that **NICHOLAS** was not in charge and that **T. WILLIAMS** should talk to **D. ALEXANDER**.  **NICHOLAS** told **T. WILLIAMS** that his daddy, **D. ALEXANDER,** was right there if he wanted to talk to him.  **D. ALEXANDER** said, in the background, that he didn't have any so he did not need to talk to **T. WILLIAMS**.

267.    Later on July 14, 2013, **D. ALEXANDER,** after asking **NICHOLAS** the identity of **T. WILLIAMS'** customer for the two kilograms of cocaine, told **NICHOLAS** to confirm the customer's identity and complete the sale for **T. WILLIAMS**.

268.    On July 14, 2013, **NICHOLAS** called **T. WILLIAMS** and told him that **D. ALEXANDER** had told him to take two of **D. ALEXANDER's** kilograms of cocaine and complete the cocaine sale for **T. WILLIAMS**.  **T. WILLIAMS** confirmed that the two kilograms of cocaine were for **CAIN,** who was ready to conclude the transaction at his house down the street.

269.     On July 14, 2013, **D. ALEXANDER** called **NICHOLAS** and confirmed that **T. WILLIAMS'** customer was **CAIN** and arranged to meet **NICHOLAS** at the house to give him the cocaine.

270.     On July 14, 2013, **NICHOLAS** and **CAIN** arranged for **NICHOLAS** to deliver the two kilograms of cocaine to **CAIN** and his customer, "Red."

271.     On July 14, 2013, **NICHOLAS** called **T. WILLIAMS** to see how much money he was supposed to have collected from **CAIN**, and **T. WILLIAMS** advised that the price was $33,500 per kilogram for a total of $67,000, for the two kilograms of cocaine.

272.     On July 19, 2013, **FOULCARD** delivered cocaine to **K. WILLIAMS** at a gas station on Siegen Lane in Baton Rouge.

273.     On July 19, 2013, **K. WILLIAMS** and **SELDERS** negotiated a sale of cocaine.

274.     On July 19, 2013, **K. WILLIAMS** and **FOSTER** arranged a sale of cocaine.

275.     On July 20, 2013, **SELDERS** complained to **K. WILLIAMS** that the cocaine he had gotten the day before had a lot of trash in it, and his customers that shoot it up do not want trash in their veins.

276.      On July 22, 2013, **K. WILLIAMS** ordered two kilograms of cocaine from **FOULCARD** and discussed the quality of the last cocaine that **FOULCARD** had sold to **K. WILLIAMS.**

277.     On July 26, 2013, **FOULCARD** delivered cocaine to **K. WILLIAMS** at the stash house on Duke Street.

278.     On July 27, 2013, **NICHOLAS** and **T. WILLIAMS** discussed three kilograms of poor quality cocaine called "rhino" that **NICHOLAS** had in his possession.  Later, **T.**

**WILLIAMS** asked **NICHOLAS** how much he should charge per ounce for a half kilogram of "rhino" cocaine.

279.     On July 28, 2013, **K. WILLIAMS** and **C. LONDON** discussed the quality of cocaine previously obtained from **FOULCARD** and the money for an upcoming purchase of cocaine from **FOULCARD**. **C. LONDON** told **K. WILLIAMS** that he had his money stored at **K. LONDON'S** house, but could not get to it because there were too many people there.

280.     On July 29, 2013, **K. WILLIAMS** and **FOULCARD** arranged the sale of one kilogram of cocaine to **C. LONDON**.

281.     On July 29, 2013, **FOULCARD** delivered cocaine to **C. LONDON** at Duke Street in Baton Rouge.

282.     On July 31, 2013, **K. WILLIAMS** instructed **POWELL** to put money in his black satchel under the bed at Oriole Street and take the cocaine out of it and weigh it.

283.     On July 31, 2013, **NICHOLAS** and **WALKER** agreed to a sale of cocaine and to meet at a gas station.

284.     On August 1, 2013, **NICHOLAS** and **J. WASHINGTON** negotiated a sale of cocaine and arranged for **J. WASHINGTON** to pick it up from **NICHOLAS**.

285.     On August 2, 2013, **K. WILLIAMS** and **FOULCARD** arranged the sale of one kilogram of cocaine to **C. LONDON**.

286.     On August 2, 2013, **FOULCARD** delivered cocaine to **C. LONDON** at Duke Street.

287.     On August 4, 2013, **K. WILLIAMS** and **POWELL** discussed the sales that **POWELL** made that day.

41

288.     On August 9, 2013, **K. WILLIAMS** told **S. WASHINGTON** that **WHITE** had stolen some pills from **K. WILLIAMS** and that he was going to shoot **WHITE** in his arms and legs and get a hatchet and cut his fingers off because he wants his money.

289.     On August 10, 2013, **STEPHANIE ZERINGUE** asked **NICHOLAS** when she could come back to work as a driver for him.  **NICHOLAS** told her it was slow, and she asked him to make something happen for her.

290.     On August 11, 2013, under the constant direction of **NICHOLAS, RUMORE** travelled from the Best Western in Donaldsonville to Houston for the purpose of transporting cocaine back to Louisiana from Houston.

291.     On or August 11, 2013, **NICHOLAS** and **J. ALEXANDER** travelled in another vehicle in tandem with **RUMORE** from the Best Western in Donaldsonville to Houston where they purchased cocaine that was transported back to Louisiana by **RUMORE**.

292.     On August 12, 2013, **T. WILLIAMS** requested two kilograms of cocaine from **NICHOLAS.  NICHOLAS** told **T. WILLIAMS** that **D. ALEXANDER** was still asleep and that he had to wait for him to wake up before he could get the two kilograms for him.

293.     On August 12, 2013, **NICHOLAS** and **D. SMITH** negotiated the sale of one kilogram of cocaine and agreed to meet at the stash house on Duke Street for delivery of the cocaine.

294.     On August 12, 2013, **NICHOLAS** and **C. LONDON** negotiated the sale of three kilograms of cocaine and agreed to meet at the stash house on Duke Street for delivery of the cocaine.

295.     On August 12, 2013, **NICHOLAS** delivered three kilograms of cocaine to **C. LONDON** and half a kilogram of cocaine to **D. SMITH** at the stash house on Duke Street.

296.     On August 14, 2013, **D. SMITH** told **NICHOLAS** that he had his money together and was ready to get the other half of his kilogram of cocaine.

297.     On August 14, 2013, **T. WILLIAMS** requested a half kilogram of cocaine from **NICHOLAS**, and **NICHOLAS** agreed to bring it to him.

298.     On August 16, 2013, **NICHOLAS** gave **RUMORE** directions to the Best Western in Donaldsonville so that **RUMORE** could travel to Houston the following day. **RUMORE** told **NICHOLAS** that her friend could not come so she brought her little boy with her and that **D. ALEXANDER** said it was okay to do so.

299.     On August 17, 2013, under the constant direction of **NICHOLAS, RUMORE** and her son travelled from the Best Western in Donaldsonville to Houston to transport cocaine back to Louisiana, in a vehicle provided to her by **NICHOLAS**.

300.     On August 17, 2013, **NICHOLAS** and **J. ALEXANDER** travelled in a separate vehicle in tandem with **RUMORE** from the Best Western in Donaldsonville to Houston where they purchased 18 kilograms of cocaine that was transported back to Louisiana by **RUMORE**.

301.     On August 17, 2013, while **RUMORE** was traveling back from Houston, she was stopped by law enforcement in Port Allen, Louisiana.

302.     On August 17, 2013, **RUMORE** told **NICHOLAS** that she has been stopped by police, that they were searching the vehicle, and that she was concerned about what they may find in the vehicle.  **NICHOLAS** assured **RUMORE** that there was nothing in her vehicle because he had it all with him.

303.     On August 17, 2013, **RUMORE** told **NICHOLAS** that law enforcement kept the vehicle because they had found a secret compartment in it, so she had called her cousin to come

and get her.  **RUMORE** asked **NICHOLAS** if **D. ALEXANDER** was going to be there to pay

her when she got back and said that she deserved overtime.

304.     During the search of the vehicle provided by **NICHOLAS** and driven to and

from Houston by **RUMORE**, law enforcement officers located an aftermarket hidden

compartment containing 18 kilograms of cocaine.

305.     On August 30, 2013, **NICHOLAS** and **J. WASHINGTON** negotiated a sale of

cocaine and arranged for **NICHOLAS** to deliver it.

306.     On September 5, 2013, during a search of the stash house on Oriole Street, law

enforcement officers located a loaded Smith and Wesson .40 caliber pistol in a sofa cushion in

the living room, a loaded Jennings 9 mm pistol under the house, three digital scales, and

photographs of  **K. WILLIAMS**.

307.     On September 5, 2013, during a search of the stash house on Duke Street, law

enforcement officers located drug trafficking tools including scales, zip lock bags, pyrex dishes,

and a food processor.

308.     On September 5, 2013, **C. LONDON** possessed at his residence on Marilyn Drive

in excess of 8,500 N-Benzylpiperazine (BZP) pills, a loaded Glock .40 caliber pistol, a digital

scale, a money counter, and over $123,000 bundled in zip lock bags labeled with names and

amounts.  **C. LONDON** also possessed another zip lock bag pinned in a pair of men's jeans

containing $3000.

309.     On September 5, 2013, **K. WILLIAMS** possessed at **K. LONDON's** residence

on Calion Drive a loaded Smith and Wesson Bodyguard, .380 caliber pistol.  The residence also

contained $37,500 and two prescription bottles without labels containing pills.

310.     On September 5, 2013, **S. WASHINGTON** possessed at her residence on White Haven Drive an Interarms .22 caliber revolver, a Taurus 9 mm semi-automatic handgun, and five prescription bottles without labels containing pills.

The above is a violation of Title 21, United States Code, Section 846, and Title 18, United States Code, Section 2.

## COUNT TWO
(Distribution of 28 Grams or More of Crack Cocaine)

311.     Paragraphs 1 and 100 of this indictment are incorporated herein as factual allegations.

312.     On or about January 22, 2013, in the Middle District of Louisiana, **KELLY D. WILLIAMS**, defendant herein, knowingly and intentionally did distribute 28 grams of more of a substance containing a detectable quantity of crack cocaine, a Schedule II controlled substance.

The above is a violation of Title 21, United States Code, Section 841(a)(1), and Title 18, United States Code, Section 2.

## COUNT THREE
(Distribution of MDMC and BZP)

313.     Paragraphs 2 and 100 of this indictment are incorporated herein as factual allegations.

314.     On or about January 22, 2013, in the Middle District of Louisiana, **CHARLES C. LONDON**, defendant herein, knowingly and intentionally did distribute substances containing a detectable amount of 3, 4-Methylenedioxymethcathinone (MDMC) and N-Benzylpiperazine (BZP), Schedule I controlled substances.

The above is a violation of Title 21, United States Code, Section 841(a)(1).

## COUNT FOUR
(Distribution of 28 Grams or More of Crack Cocaine)

315.     Paragraphs 2, 8 and 101 of this indictment are incorporated herein as factual allegations.

316.     On or about January 30, 2013, in the Middle District of Louisiana, **CHARLES C. LONDON** and **MYRON CHEVELLE HART**, defendants herein, knowingly and intentionally did distribute 28 grams or more of a substance containing a detectable quantity of crack cocaine, a Schedule II controlled substance, and did aid and abet each other in said distribution.

The above is a violation of Title 21, United States Code, Section 841(a)(1), and Title 18, United States Code, Section 2.

## COUNT FIVE
(Distribution of 28 Grams or More of Crack Cocaine)

317.     Paragraphs 1 and 102 of this indictment are incorporated herein as factual allegations.

318.     On or about March 6, 2013, in the Middle District of Louisiana, **KELLY D. WILLIAMS**, defendant herein, knowingly and intentionally did distribute 28 grams or more of a substance containing a detectable quantity of crack cocaine, a Schedule II controlled substance.

The above is a violation of Title 21, United States Code, Section 841(a)(1).

## COUNT SIX
(Distribution of Cocaine, MDMC and 4-FMC)

319.     Paragraphs 2, 22, 103 and 104 of this indictment are incorporated herein as factual allegations.

320.     On or about March 29, 2013, in the Middle District of Louisiana, **CHARLES C. LONDON** and **KELVIN RONELLE JOHNSON**, defendants herein, knowingly and intentionally did distribute a substance containing a detectable quantity of cocaine, a Schedule II

controlled substance, and substances containing a detectable amount of 3, 4-

Methylenedioxymethcathinone (MDMC) and 4-Fluoromethcathinone (4-FMC), Schedule I

controlled substances, and did aid and abet each other in said distribution.

The above is a violation of Title 21, United States Code, Section 841(a)(1), and Title 18,

United States Code, Section 2.

## COUNT SEVEN
(Distribution of Cocaine and BZP)

321.    Paragraphs 2 and 108 of this indictment are incorporated herein as factual

allegations.

322.    On or about April 18, 2013, in the Middle District of Louisiana, **CHARLES C.**

**LONDON**, defendant herein, knowingly and intentionally did distribute a substance containing a

detectable quantity of cocaine, a Schedule II controlled substance, and a substance containing a

detectable amount of N-Benzylpiperazine (BZP), a Schedule I controlled substance.

The above is a violation of Title 21, United States Code, Section 841(a)(1).

## COUNT EIGHT
(Possession with Intent to Distribute Marijuana)

323.    Paragraph 38 of this indictment is incorporated herein as a factual allegation.

324.    On or about May 6, 2013, in the Middle District of Louisiana, **JERRON**

**ALBRITTON**, defendant herein, knowingly and intentionally did possess with the intent to

distribute marijuana, a Schedule I controlled substance.

The above is a violation of Title 21, United States Code, Section 841(a)(1).

47

## COUNT NINE
(Distribution of Cocaine)

325.     Paragraphs 2 and 161 of this indictment are incorporated herein as factual

allegations.

326.     On or about May 10, 2013, in the Middle District of Louisiana, **CHARLES C.**

**LONDON**, defendant herein, knowingly and intentionally did distribute a substance containing a

detectable quantity of cocaine, a Schedule II controlled substance.

The above is a violation of Title 21, United States Code, Section 841(a)(1).

## COUNT TEN
(Distribution of Oxycodone)

327.     Paragraph 1 of this indictment is incorporated herein as a factual allegation.

328.     On or about May 10, 2013, in the Middle District of Louisiana, **KELLY D.**

**WILLIAMS**, defendant herein, knowingly and intentionally did distribute a substance

containing a detectable quantity of oxycodone, a Schedule II controlled substance.

The above is a violation of Title 21, United States Code, Section 841(a)(1).

## COUNT ELEVEN
(Conspiracy To Acquire Controlled Substances By Fraud)

329.     Paragraphs 1, 12 and 14 of this indictment are incorporated herein as factual

allegations.

330.     Beginning on an exact date unknown to the Grand Jury, but on or before January

22, 2013, and continuing until in or about September 2013, in the Middle District of Louisiana

and elsewhere, **KELLY D. WILLIAMS** and **SEKARI DAVIS WASHINGTON**, defendants

herein, did conspire with each other and others, both known and unknown to the Grand Jury, to

knowingly and intentionally acquire and obtain possession of controlled substances by

misrepresentation, fraud, deception and subterfuge, in violation of Title 21, United States Code,

Section 843(a)(3), and did aid and abet the commission of said conspiracy.

The above is a violation of Title 21, United States Code, Section 846, and Title 18,

United States Code, Section 2.

## COUNT TWELVE
(Conspiracy to Distribute and Possess with Intent to Distribute MDMA)

331.    Paragraphs 2, 36 and 37 of this indictment are incorporated herein as factual

allegations.

332.    Beginning on an exact date unknown to the Grand Jury, but in or before January

22, 2013, and continuing until in or about September, 2013, in the Middle District of Louisiana

and elsewhere, **CHARLES C. LONDON, JOSEPH D. SERGENT,** and **KEEYON**

**MONDRELL SANDERS**, defendants herein, did conspire with each other and others, both

known and unknown to the Grand Jury, to knowingly and intentionally distribute and possess

with the intent to distribute 3, 4-Methylenedioxymethamphetamine (MDMA), a Schedule I

controlled substance, in violation of Title 21, United States Code, Section 841(a)(1), and did aid

and abet the commission of said conspiracy.

The above is a violation of Title 21, United States Code, Section 846, and Title 18,

United States Code, Section 2.

## COUNT THIRTEEN
(Possession with Intent to Distribute Cocaine)

333.    Paragraphs 3, 4 and 31 of this indictment are incorporated herein as factual

allegations.

334.    On or about August 17, 2013, in the Middle District of Louisiana and elsewhere,

**C'PRIEN C. NICHOLAS, DEMITORIS C. ALEXANDER** and **JOHNNY C.**

49

**ALEXANDER**, defendants herein, knowingly and intentionally did possess with the intent to distribute five kilograms or more of a substance containing a detectable quantity of cocaine, a Schedule II controlled substance, and did aid and abet the commission of said possession.

The above is a violation of Title 21, United States Code, Section 841(a)(1), and Title 18, United States Code, Section 2.

**COUNT FOURTEEN**
(Felon in Possession of a Firearm)

335.    Paragraphs 1 and 309 of this indictment are incorporated herein as factual allegations.

336.    On or about September 5, 2013, in the Middle District of Louisiana, **KELLY D. WILLIAMS**, defendant herein, having been convicted of a crime punishable by imprisonment for a term exceeding one year (a felony), knowingly did possess a firearm, that is, a Smith and Wesson, Model Bodyguard, .380 handgun, bearing serial number EBT6759, which firearm had previously been transported in interstate commerce.

The above is a violation of Title 18, United States Code, Section 922(g)(1).

**COUNT FIFTEEN**
(Felon in Possession of a Firearm)

337.    Paragraphs 2 and 308 of this indictment are incorporated herein as factual allegations.

338.    On or about September 5, 2013, in the Middle District of Louisiana, **CHARLES C. LONDON**, defendant herein, having been convicted of a crime punishable by imprisonment for a term exceeding one year (a felony), knowingly did possess a firearm, that is, a Glock, Model 22, .40 caliber pistol, bearing serial number HEP542, which firearm had previously been transported in interstate and foreign commerce.

50

The above is a violation of Title 18, United States Code, Section 922(g)(1).

## COUNT SIXTEEN
### (Possession with Intent to Distribute BZP)

339.    Paragraphs 2 and 308 of this indictment are incorporated herein as factual allegations.

340.    On or about September 5, 2013, in the Middle District of Louisiana, **CHARLES C. LONDON**, defendant herein, knowingly and intentionally did possess with the intent to distribute a substance containing a detectable amount of N-Benzylpiperazine (BZP), a Schedule I controlled substance.

The above is a violation of Title 21, United States Code, Section 841(a)(1).

## COUNT SEVENTEEN
### (Possession of a Firearm in Furtherance of a
### Drug Trafficking Crime)

341.    Paragraphs 2 and 308 of this indictment are incorporated herein as factual allegations.

342.    On or about September 5, 2013, in the Middle District of Louisiana, **CHARLES C. LONDON**, defendant herein, knowingly did possess a firearm, that is, a Glock, Model 22, .40 caliber pistol, bearing serial number HEP542, in furtherance of the drug trafficking crime alleged in Count Sixteen, above.

The above is a violation of Title 18, United States Code, Section 924(c).

## COUNT EIGHTEEN
(Misprision of a Felony)

343.    Paragraphs 39 and 142 of this indictment are incorporated herein as factual

allegations.

344.    On or about May 4, 2013, in the Middle District of Louisiana, **BARBARA**

**DEYATTA JORDON**, defendant herein, having knowledge of the actual commission of a

felony cognizable by a Court of the United States, namely, possession with the intent to

distribute cocaine and MDMA, in violation of Title 21, United States Code, Section 841(a)(1),

did conceal such crime by transporting drug proceeds and allowing Charles C. London to

conceal drugs and drug proceeds in their residence, and did not, as soon as possible, make the

crime known to some judge or other person in civil or military authority under the United States.

The above is a violation of Title 18, United States Code, Section 4.

## COUNT NINETEEN
(Distribution of Oxycodone)

345.    Paragraph 24 of this indictment is incorporated herein as factual allegation.

346.    On or about August 15, 2013, in the Middle District of Louisiana, **GERRY**

**EARL GRIFFIN**, defendant herein, knowingly and intentionally did distribute a substance

containing a detectable quantity of oxycodone, a Schedule II controlled substance.

The above is a violation of Title 21, United States Code, Section 841(a)(1).

## COUNTS  TWENTY – TWENTY-TWO
(Unlawful Travel in Aid of a Racketeering Enterprise)

347.    Paragraphs 3, 31, 32, 34, 35, 247 through 250, 290, 291, 298 through 303 of this

indictment are incorporated herein as factual allegations.

348.    On or about the dates listed below, in the Middle District of Louisiana and

elsewhere, the below listed defendants did travel in interstate commerce with the intent to

promote, manage, establish, carry on, and facilitate unlawful activities, that is, the distribution of

cocaine, and conspiracy to do so, violations of Title 21, United States Code, Sections 841 and

846, and thereafter each defendant did perform, and attempt to perform, acts to promote,

manage, establish, carry on, and facilitate such unlawful activities by, among other things,

transporting and distributing controlled substances in the state of Louisiana and elsewhere:

| COUNT | DATE OF TRAVEL | DEFENDANTS | DESCRIPTION OF TRAVEL |
|---|---|---|---|
| 20 | July 5, 2013 | **C'PRIEN NICHOLAS JOHNNY ALEXANDER ASHLEY HEBERT SUSAN ZERINGUE** | **NICHOLAS, ALEXANDER, HEBERT** and **ZERINGUE** traveled via automobiles from Gonzales, Louisiana to Houston, Texas for the purpose of transporting cocaine back to be distributed in Gonzales and Baton Rouge, Louisiana |
| 21 | August 11, 2013 | **C'PRIEN NICHOLAS JOHNNY ALEXANDER ANDREA RUMORE** | **NICHOLAS, ALEXANDER** and **RUMORE** traveled via automobiles from Gonzales, Louisiana to Houston, Texas for the purpose of transporting cocaine back to be distributed in Gonzales and Baton Rouge, Louisiana |
| 22 | August 17, 2013 | **C'PRIEN NICHOLAS JOHNNY ALEXANDER ANDREA RUMORE** | **NICHOLAS, ALEXANDER** and **RUMORE** traveled via automobiles from Gonzales, Louisiana to Houston, Texas for the purpose of transporting cocaine back to be distributed in Gonzales and Baton Rouge, Louisiana |

Each of the above is a violation of Title 18, United States Code, Sections 1952(a)(3) and

2.

## COUNTS 23 TO 86
(Unlawful Use of Communications Facilities)

349.    Paragraphs 1 through 34, 99 through 305 of this indictment are incorporated

herein as factual allegations.

350.    On or about the dates listed below, in the Middle District of Louisiana, the below named defendants, knowingly and intentionally used a communications facility (a telephone) in committing and in causing and facilitating the commission of felonies, that is, the distribution and possession with intent to distribute cocaine and cocaine base, and the conspiring to do the same, which are violations of Title 21, United States Code, Sections 846 and 841(a)(1), each use constituting a separate count:

| COUNT | DEFENDANTS | DATE OF USE | DESCRIPTION OF USE OF TELEPHONE |
|---|---|---|---|
| 23 | K. WILLIAMS K. LONDON | April 20, 2013 | Discussion of drug proceeds |
| 24 | K. WILLIAMS S. SMITH | April 22, 2013 | Discussion of price of cocaine |
| 25 | C. LONDON S. SMITH | April 24, 2013 | Discussion of drug proceeds and prices |
| 26 | K. WILLIAMS WHITE | April 24, 2013 | Discussion of cocaine sales |
| 27 | C. LONDON HART | April 26, 2013 | Discussion of quality of cocaine and conversion of cocaine to crack cocaine |
| 28 | K. WILLIAMS FOULCARD | April 27, 2013 | Discussion of quality of cocaine |
| 29 | K. WILLIAMS HART | April 27, 2013 | Discussion of cocaine sources and sales |
| 30 | K. WILLIAMS COOPER | April 27, 2013 | Discussion of cocaine sales |
| 31 | C. LONDON HILLIARD | May 1, 2013 | Discussion of cocaine source |
| 32 | K. WILLIAMS FOULCARD | May 3, 2013 | Discussion of two kilogram cocaine transaction |
| 33 | C. LONDON D. SANDERS | May 3, 2013 | Discussion of sale of cocaine |
| 34 | K. WILLIAMS S. WASHINGTON | May 8, 2013 | Discussion and counting of proceeds from drug sales |
| 35 | C. LONDON D. SANDERS | May 8, 2013 | Discussion of sale of cocaine |
| 36 | C. LONDON JOHNSON | May 9, 2013 | Discussion of cocaine purchase |
| 37 | C. LONDON LEWIS | May 9, 2013 | Discussion of cocaine purchase |

| 38 | **C. LONDON HILLIARD** | May 9, 2013 | Discussion of cocaine purchase |
| 39 | **C. LONDON DELAVALLADE** | May 9, 2013 | Discussion of conversion of cocaine to crack cocaine |
| 40 | **C. LONDON GARDNER** | May 10, 2013 | Discussion of sale of cocaine |
| 41 | **C. LONDON GRIFFIN** | May 10, 2013 | Discussion of sale of cocaine |
| 42 | **K. WILLIAMS WHITE** | May 14, 2013 | Discussion of crack cocaine |
| 43 | **C. LONDON GRIFFIN** | May 14, 2013 | Discussion of sale of cocaine |
| 44 | **K. WILLIAMS NICHOLAS** | May 20, 2013 | Discussion of sale of cocaine |
| 45 | **C. LONDON JOHNSON** | May 27, 2013 | Discussion of conversion of cocaine to crack cocaine |
| 46 | **C. LONDON NORRIS** | May 27, 2013 | Discussion of sale of cocaine |
| 47 | **C. LONDON DELAVALLADE** | May 28, 2013 | Discussion of sale of cocaine |
| 48 | **K. WILLIAMS FOSTER** | May 29, 2013 | Discussion of sale of cocaine |
| 49 | **K. WILLIAMS SELDERS** | May 30, 2013 | Discussion of sale of cocaine |
| 50 | **C. LONDON LEWIS** | May 31, 2013 | Discussion of cocaine purchase |
| 51 | **K. WILLIAMS ALLEN** | May 31, 2013 | Discussion of sale of cocaine |
| 52 | **C. LONDON NORRIS** | June 3, 2013 | Discussion of sale of cocaine |
| 53 | **C. LONDON HILLIARD** | June 4, 2013 | Discussion price of cocaine |
| 54 | **K. WILLIAMS COOPER** | June 5, 2013 | Discussion of sale of cocaine |
| 55 | **K. WILLIAMS SELDERS** | June 5, 2013 | Discussion of sale of cocaine |
| 56 | **K. WILLIAMS KNOX** | June 7, 2013 | Discussion of using crack cocaine to "rent" a random car |
| 57 | **C. LONDON NICHOLAS** | June 8, 2013 | Discussion of sale of cocaine |
| 58 | **NICHOLAS DELAVALLADE** | June 9, 2013 | Discussion of sale of cocaine |
| 59 | **K. WILLIAMS GARDNER** | June 13, 2013 | Discussion of sale of cocaine |
| 60 | **K. WILLIAMS S. WASHINGTON** | June 14, 2013 | Discussion of drug proceeds |

| 61 | NICHOLAS WALKER | June 14, 2013 | Discussion of sale of cocaine |
|---|---|---|---|
| 62 | NICHOLAS D. SMITH | June 17, 2013 | Discussion of sale of cocaine |
| 63 | NICHOLAS T. WILLIAMS | June 21, 2013 | Discussion of purchase of cocaine |
| 64 | K. WILLIAMS HART | June 25, 2013 | Discussion of sources of cocaine |
| 65 | NICHOLAS D. SMITH | June 25, 2013 | Discussion of quality of cocaine |
| 66 | K. WILLIAMS S. WASHINGTON | June 27, 2013 | Discussion of money to purchase cocaine |
| 67 | NICHOLAS MILLS | July 2, 2013 | Discussion of sale of cocaine |
| 68 | NICHOLAS CAIN | July 8, 2013 | Discussion of sale of cocaine |
| 69 | NICHOLAS MILLS | July 8, 2013 | Discussion of sale of cocaine |
| 70 | K. WILLIAMS FOULCARD | July 9, 2013 | Discussion of sale of cocaine |
| 71 | K. WILLIAMS FOSTER | July 9, 2013 | Discussion of cocaine sale and sources of supply |
| 72 | D. ALEXANDER NICHOLAS | July 14, 2013 | Discussion of sale of cocaine |
| 73 | NICHOLAS CAIN | July 14, 2013 | Discussion of sale of cocaine |
| 74 | K. WILLIAMS SELDERS | July 19, 2013 | Discussion of sale of cocaine |
| 75 | K. WILLIAMS FOSTER | July 19, 2013 | Discussion of sale of cocaine |
| 76 | NICHOLAS T. WILLIAMS | July 27, 2013 | Discussion of price for cocaine |
| 77 | K. WILLIAMS FOULCARD | July 30, 2013 | Discussion of quality of cocaine and conversion of cocaine to crack cocaine |
| 78 | K. WILLIAMS POWELL | July 31, 2013 | Discussion of cocaine sales and quantity |
| 79 | NICHOLAS WALKER | July 31, 2013 | Discussion of sale of cocaine |
| 80 | NICHOLAS J. WASHINGTON | August 1, 2013 | Discussion of sale of cocaine |
| 81 | K. WILLIAMS POWELL | August 4, 2013 | Discussion of cocaine sales |
| 82 | NICHOLAS STEPHANIE ZERINGUE | August 10, 2013 | Discussion of transporting cocaine |

| 83 | **NICHOLAS T. WILLIAMS** | August 12, 2013 | Discussion of sale of cocaine |
| 84 | **NICHOLAS D. SMITH** | August 14, 2013 | Discussion of sale of cocaine |
| 85 | **NICHOLAS RUMORE** | August 17, 2013 | Discussion of location of cocaine |
| 86 | **NICHOLAS J. WASHINGTON** | August 30, 2013 | Discussion of sale of cocaine |

Each of the above is a violation of Title 21, United States Code, Section 843(b), and Title 18, United States Code, Section 2.

## FORFEITURE ALLEGATION

351. Paragraphs 1 through 39 of this indictment are incorporated herein.

352. As a result of the felony offenses alleged in Counts 1 through 13, 19, and 20-22, and upon conviction of these offenses as charged, **K. WILLIAMS, C. LONDON, NICHOLAS, D. ALEXANDER, T. WILLIAMS, FOULCARD, S. SMITH, HART, D. SANDERS, HILLIARD, LEWIS, S. WASHINGTON, COOPER, WHITE, POWELL, FOSTER, GARDNER, SELDERS, ALLEN, KNOX, DELAVALLADE, JOHNSON, NORRIS, GRIFFIN, K. LONDON, WALKER, D. SMITH, J. WASHINGTON, CAIN, MILLS, J. ALEXANDER, RUMORE, STEPHANIE ZERINGUE, SUSAN ZERINGUE, HEBERT, SERGENT, K. SANDERS,** and **ALBRITTON**, defendants herein, shall forfeit to the United States, pursuant to Title 21, United States Code, Section 853, any and all property constituting, or derived from proceeds obtained, directly or indirectly, as a result of the said violations, and any property used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of the violations.

353. If any of the property or proceeds obtained directly or indirectly as a result of the offenses charged, due to any act of omission of the defendants:

      a.    cannot be located upon the exercise of due diligence;

57

      b.      has been transferred or sold to, or deposited with a third party;

      c.      has been placed beyond the jurisdiction of the court;

      d.      has been substantially diminished in value; or

      e.      has been commingled with other property which cannot be divided

              without difficulty,

the United States of America shall be entitled to a forfeiture money judgment and shall be allowed to forfeit substitute property pursuant to Title 21, United States Code, Section 853(p), in satisfaction of the forfeiture money judgment.

354.    Upon conviction on Count Fourteen above, **KELLY D. WILLIAMS**, defendant herein, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 924(d)(1), any firearm or ammunition involved in or used in said violation, namely, the Smith and Wesson, Model Bodyguard, .380 handgun, bearing serial number EBT6759.

355.    Upon conviction on Count Fifteen above, **CHARLES C. LONDON**, defendant herein, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 924(d)(1), any firearm or ammunition involved in or used in said violation, namely, the Glock, Model 22, .40 caliber pistol, bearing serial number HEP542.

UNITED STATES OF AMERICA, by            **A TRUE BILL**

_____     _____
J. WALTER GREEN                     GRAND JURY FOREPERSON
UNITED STATES ATTORNEY
MIDDLE DISTRICT OF LOUISIANA

_____     June 11, 2015
JENNIFER M. KLEINPETER            DATE
ASSISTANT UNITED STATES ATTORNEY